IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

GARY DONNELL RICHARDSON                                               PLAINTIFF

v.                          Civil No. 1:10-cv-01015

SHERIFF KEN JONES; CHIEF
BURTON CLARK; LT. BASS;
SGT. JIM SANDERS; and
OFFICER GRIER                                                          DEFENDANTS

## MEMORANDUM OPINION

Plaintiff, Gary Donnell Richardson (hereinafter Richardson), filed this civil rights case pursuant to the provisions of 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis*. The case is before me pursuant to the consent of the parties (ECF No. 20).

Richardson was arrested on September 21, 2009, and taken to the Union County Detention Center (UCDC). He remained incarcerated there until August 25, 2010, when he was transported to the Arkansas State Hospital. Richardson contends his constitutional rights in the following ways: (1) he was not given his *Miranda* warnings upon arrest; (2) his home was searched without a warrant; (3) he was subjected to unconstitutional conditions of confinement; (4) excessive force was used against him; (5) jail staff made false statements about him and treated him in a degrading manner; (6) he was not brought before a judge within one hundred and twenty days of his arrest; and (7) he was not given adequate time in the law library.

Defendants filed a motion for summary judgment (ECF No. 24). Plaintiff filed his response to the motion (ECF No. 34). The motion is now ready for decision.

### 1. Background

On September 21, 2009, a warrant was issued for Richardson's arrest on the charge of terroristic threatening. *Defendants' Exhibit* A (hereinafter *Defts' Ex.*). Richardson was arrested that same day and booked into the UCDC. *Plaintiff's Response* (Doc. 35) at ¶ 2(A) (hereinafter *Resp.*). The arrest report indicates Deputy Brian Gross served the terroristic threatening warrant on Richardson at the detention center. *Defts' Ex.* I. Gross is not a party to this lawsuit. *Resp.* at ¶ 26. Richardson maintains his rights were violated during his arrest because he was not read his rights and he was not presented with a search warrant although his home was entered and searched. *Id.* at ¶ 24.

With respect to his *Miranda* rights, Richardson states he was not questioned about any details regarding the criminal charges against him. *Resp.* at ¶ 29. He asserts he was not given an opportunity to cooperate. *Id.* He indicates the questions asked by the officers were not in relation to his arrest or his criminal charges. *Id.*

Although, Chief Clark Burton, by affidavit, states he was not present during Richardson's arrest. *Defts' Ex.* H. It is Richardson's belief that Burton was present during the arrest. *Resp.* at ¶ 23. Richardson's first judicial appearance was on September 23, 2009. *Resp.* at ¶ 2(B).

Lt. Walter Bass (Bass) is the jail administrator at the UCDC. *Resp.* at ¶ 3(A). Richardson has been diagnosed as having a schizoaffective disorder.[1] *Id.* at ¶ 3(C). According to Richardson, he is not delusional, does not hallucinate, and is not homicidal or suicidal. *Id.*. Rather, he states he has disorganized thoughts. *Id.* He indicates he is undergoing treatment at the Arkansas State Hospital but is not on any medication. *Id.*

On October 7th, after a couple of days of not being able to bathe, Richardson asserts he

---

[1] According to the United States National Library of Medicine and the National Institute of Health, schizoaffective disorder is a mental condition that causes both a loss of contact with reality (psychosis) and mood problems. http://www.nlm.nih.gov/medlineplus/ency/article/000930.htm (accessed December 28, 2010).

stepped out of his cell with his Bible in his hand, got down on his knees, took off his shirt, and put his hands behind his back to show he was not a threat. *Richardson's Statement* pg. 1 (ECF No. 5). Richardson indicates he then asked if he could speak to an attorney, judge, psychologist, or anyone in the facility about why he was incarcerated and why he was "receiving this treatment." *Id.* Richardson states Officer Payne ran up to him yelling. *Id.* at pg. 2. Richardson states he asked to speak to a superior officer. *Id.* Payne briefly left and returned with Sergeant Smith and Officer Grier. *Id.* A short time later, Sergeant Sanders arrived. *Id.*

According to Richardson, Grier, Payne, and Smith held him down while Sanders choked him. *Resp.* at ¶ 17. While choking him, Richardson asserts Sanders remarked how good it felt to him. *Id.* As a result of the use of force, Richardson states he received "three separate, horizontal laceration marks on the bicep area of the right arm." *Id.* After the incident, he states he was not allowed to properly clean the wound. *Id.*

On October 29, 2009, an order was entered in Richardson's state court criminal case directing his mental examination. *Resp.* at ¶ 13(B). Richardson states that he had been given a court date of around October 28th but was not allowed to attend court. While he waited to be evaluated, Richardson remained incarcerated at the UCDC. *Defts' Ex.* F; *Resp.* at ¶ 14. After evaluation, Richardson was found to be incompetent to stand trial. *Id.* at ¶ 13(A).

According to Bass, Richardson has behaved violently in the past while housed at the UCDC. *Defts' Ex.* D at ¶ 3. Bass asserts that there were several instances when Richardson was let out of his cell and would refuse to go back into his cell. *Id.* at ¶ 4. When verbal coaxing did not work, Richardson sometimes had to be grabbed by the arm and dragged back into the cell. *Id.* However, Bass maintains that only the amount of force necessary, given the situation, was used. *Id.*

In contrast, Richardson notes he was not charged with any acts of violence against anyone while he was in the UCDC. *Resp.* at ¶ 3(D). Furthermore, he states he did not "display any violent behavior toward any members of the community" and "did not feel comfortable displaying any negative behavior while [he] was at the" UCDC. *Id.* at ¶¶ 4(A)-(B).

Between the dates of September 29, 2009, and November 13, 2009 while undergoing "the treatment of not being allowed to bathe," Richardson asserts he was not given a toothbrush, tooth paste, soap, or a razor for personal hygiene. *Resp.* at ¶ 5. Richardson asserts he asked to shower on a daily basis. *Id.* On November 13th, Richardson states an officer unlocked his cell and told him that he was going to be allowed to bathe and get cleaned up. *Id.* at ¶ 6. A trustee was also told to wash Richardson's bedding. *Id.*

With the exception of a couple of days, Richardson received three meals a day. *Resp.* at ¶ 7. The food was nutritionally adequate to maintain his health. *Id.* at ¶ 8. However, on one occasion in January of 2010, Richardson asserts he and other inmates were served hot dogs which were partially green. *Id.* at ¶ 9. They refused to eat the hot dogs. *Id.* Richardson states there were also a few instances when the inmates found "bugs (little not like creatures)" in the food. *Id.* at ¶ 10. Finally, he indicates the food would sit for prolonged periods of time on a serving cart in the hallway until an officer opened the door and alerted the trustees that the food had arrived. *Id.*

On December 3, 2009, Richardson submitted a grievance complaining of an abuse of power. *Resp.* at ¶ 16. He complained of being chocked by Sanders. *Id.* In response, he was told he had refused numerous times to return to his cell and had to be physically forced into it. *Defts' Ex.* E at pg. 1. He also complained of not being allowed to bathe between September 29th and November 13th and not being allowed to use the "Bob Barker products." *Resp.* at ¶ 16. In response, he was

told he was given a shower every time he requested one but that he refused most of the time. *Defts' Ex.* E. He was also told he was given toilet paper, soap, etc., every time it was passed out. *Id.*

Richardson also complained that he was not allowed to see his Mother and fiance on certain occasions. *Defts' Ex.* E at pg. 1. In response, he was told he was not allowed vitiation on a few occasions because of his hostility. *Id.*

On December 9th, Richardson submitted another grievance complaining of: inadequate access to the law library; personal necessity items not being passed out in a timely fashion; unnecessary use of falsified statements from the officers to the inmates; the lack of an effective grievance system; the lack of common courtesy between guards and inmates; and the need for maintenance service on the heating and ventilation systems to all pods. *Defts' Ex.* E at pg. 2.

In response, Richardson was told: all inmates have the right to use the law library upon request; personal items (toilet paper, soap, razors) are passed out every Wednesday; grievances, not opinions, are responded to; officers are instructed to treat inmates with courtesy; and there have not been any complaints regarding the heating system or ventilation from other inmates. *Defts' Ex.* E at pg. 2.

From September 23, 2009, until February of 2010, Richardson maintains the detention center was heavily infested with roaches. *Resp.* at ¶ 21. Richardson was housed in E-pod and B-pod at various times and he maintains the roaches were abundant in both pods. *Id.*

While he was housed in B-pod in cell 4, Richardson maintains that whenever it rained, the water would pour out of a heating duct in the room. *Resp.* at ¶ 22. When the rain quit, he indicates the incoming water would slow to a drip and would eventually stop altogether. *Id.*

On June 3, 2010, an order of acquittal due to lack of capacity was entered. *Resp.* at pgs. 24-

25. Richardson was committed to the custody of the Director of the Department of Human Services for evaluation. *Id.* On August 25, 2010, Richardson was transported to the Arkansas State Hospital. *Resp.* at ¶ 27.

**2. Discussion**

As noted above, Richardson asserts a number of claims. His claims will be addressed in turn.

**(A).** *Miranda Warnings*

He first claims his rights were violated at the time of his arrest because he was not given his *Miranda* warnings.[2] This claim is without merit. The Constitution does not require the giving of *Miranda* warnings. *See e.g., Chavez v. Martinez*, 538 U.S. 760 (2003). If statements obtained during custodial interrogation are not used against the party, there is no constitutional violation. *Davis v. City of Charleston*, 827 F.2d 317, 322 (8th Cir. 1987). "Moreover, violations of *Miranda* rights do not subject police officers to liability under § 1983." *Marshall v. Columbia Lea Regional Hosp.*, 345 F.3d 1157, 1165 (10th Cir. 2003); *see also Renda v. King*, 347 F.3d 550, 552 (3rd Cir. 2003)(plaintiff may not base a § 1983 claim on the mere fact that she was subjected to custodial interrogation without having been provided her Miranda warnings); *Cooper v. Dupnik*, 963 F.2d 1220, 1243-44 (9th Cir. 1992)(A technical *Miranda* violation will not support a cause of action under § 1983).

**(B).** *Search of the House*

According to Richardson, he was apprehended by three officers from the Sheriff's Department. *Resp.* at ¶ 23. Another officer was present in a burgundy or deep brown sports utility vehicle. After he again saw the same officer at the UCDC, Richardson concluded it was Chief Clark Burton.

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Nothing in the summary judgment record suggests that any of the named Defendants were personally involved in, or responsible for, the alleged illegal search. *See e.g., Reed v. Woodruff County*, 7 F.3d 808, 810 (8th Cir. 1993)(explaining that to state a claim under § 1983, a plaintiff must allege that the defendant's actions amounted to a violation of the Constitution or laws of the United States). While Burton is mentioned as being at the scene of the arrest, Richardson merely states Burton was in a vehicle at the scene. *Resp.* at ¶ 23. Richardson describes no actions taken by Burton or any basis on which Burton could be held liable under § 1983. *Id.* at ¶ 24.

**(C).** *Unconstitutional Conditions of Confinement*

According to Richardson, between the dates of September 29th and November 13, 2009, he was not allowed to bathe, use the commissary, or use hygiene products. He also alleges the food served was not cooked up to standards, there were bugs in the food, an insufficient amount of food was provided, and some food was served on a predictable periodic basis. With respect to the facility in general, Richardson contends it was infested with roaches and leaked when it rained.

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833 (1998)(citation omitted). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

The Eighth Amendment to the United States Constitution prohibits the imposition of cruel and unusual punishment. U.S. Const. amend. VIII. *See Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006)(deliberate indifference standard of the Eighth Amendment applies to all claims that prison officials failed to provide adequate food, clothing, shelter, etc.). The Eighth Amendment prohibits

punishments that deprive inmates of the minimal civilized measure of life's necessities." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996); *see also Hall v. Dalton*, 34 F.3d 648, 650 (8th Cir. 1994)("[I]n this circuit, the standards applied to Eighth Amendment and Fourteenth Amendment claims have been the same."). Jail or prison officials must provide reasonably adequate ventilation, sanitation, bedding, hygienic materials, food, and utilities.

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004)(*citing Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner" *Revels*, 382 F.3d at 875 (citations and internal quotation marks omitted). Deliberate indifference is established when the Plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Revels,* 382 F.3d at 875. The standards against which a court measures prison conditions are "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).

Keeping these principles in mind, I turn to an examination of the conditions of confinement alleged to exist in this case. With respect to his meals, Richardson maintains they were not cooked to "standards," on a few occasions the inmates did not receive three meals a day, bugs were found in the food of "inmates" on several occasions, not enough food was served, on one occasion inmates were served green hotdogs which they refused to eat, and some food was served on a predictable basis. The Eighth Amendment's prohibition against cruel and unusual punishment is violated if an

inmate is not provided with meals adequate to maintain his health. *See e.g., Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996); *Campbell v. Cauthron*, 623 F.2d 503, 508 (8th Cir. 1980)(prisoners are guaranteed a reasonably adequate diet). Merely because the food is not prepared to an inmate's taste or the fact that an inmate would prefer other foods does not implicate the Eighth Amendment. Rather, the Eighth Amendment is only violated if the food provided is inadequate to maintain good health. *See e.g., Burgin v. Nix*, 899 F.2d 733, 734-35 (8th Cir. 1990)(inmates do not have a right to be served a particular type of food).

"The deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the 'minimal civilized measure of life's necessities.'" *Talib v. Gilley*, 138 F.3d 211, 214 n. 3 (5th Cir. 1998)(expressing doubt that Talib who missed about fifty meals in five months and lost fifteen pounds met this threshold)(*quoting Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)). "Whether the deprivation of food falls below this threshold depends on the amount and duration of the deprivation." *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir. 1986).

In this case, Richardson has failed to show a genuine issue of material fact exists as to whether his constitutional rights were violated by the diet he was provided while at the UCDC. There is no indication his health suffered from the diet he received. *Resp.* at ¶ 8 (The food served was nutritionally adequate to maintain health); *see Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992)("no evidence that the food he was served was nutritionally inadequate or prepared in a manner presenting an immediate danger to his health, or that his health suffered as a result of the food."); *Brown-El v. Delo*, 969 F.2d 644, 648 (8th Cir. 1992)(claim that constitutional rights were violated when he was served cold food was frivolous). Nor does the mere fact that Richardson may have on certain occasions received less than three meals a day state a claim of constitutional dimension. *See*

*e.g., Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir. 1986)(even on a regular permanent basis, two meals a day may be adequate). *See also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999)(claim that inmate missed eight meals properly dismissed as frivolous); *Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982)(Eighth Amendment not violated when inmate served only one meal a day for fifteen consecutive days where the one meal was sufficient to maintain normal health).

Next, Richardson argues that bugs were occasionally found in the food. These isolated incidents do not state a claim of constitutional dimension. *See e.g., Wishon v. Gammon*, 978 F.3d 446, 449 (8th Cir. 1992)("[P]risoners have a right to nutritionally adequate food; however, Wishon has presented no evidence that the food he was served was nutritionally inadequate or prepared in a manner presenting an immediate danger to his health, or that his health suffered as a result of the food"); *Hamm v. DeKalb County*, 774 F.2d 1567, 1572 (11th Cir. 1985)("The fact that the food occasionally contains foreign objects . . . does not amount to a constitutional deprivation"); *Lunsford v. Reynolds*, 376 F. Supp. 526, 527 (W.D. Va. 1974)("The only contention concerning food which is detailed at all, is the inmates' complaint that their food frequently contains insects. Nevertheless, occasional incidents of a foreign object contained in food, while regrettable, does not present a question of constitutional proportion").

Next, Richardson maintains he was not allowed to bathe, have hygiene products, or use the commissary from September 29th to November 13th. Defendants' maintain it is simply not true that Richardson was not provided with hygiene products or allowed to shower. They point to the response to Richardson's grievance dated December 3rd, *Defts' Ex*. E, and to Bass' affidavit which provides that Richardson was offered a shower everyday he was at the UCDC, *Defts' Ex*. D.

Basic personal hygiene falls within "the minimal civilized measure of life's necessities" to

-10-

which a prisoner is entitled. *See Farmer,* 511 U.S. at 834 (*citing Rhodes v. Chapman,* 452 U.S. 337, 347 (1981)). Given the contradictory statements and the lack of any other record evidence on this issue, I believe there is a genuine issue of material fact as to whether Richardson was denied basic hygiene from September 29th to November 13th.

His contention he was denied access to a commissary is without merit. There is no constitutional right to have access to a commissary. *See e.g., Tokar v. Armontrout*, 97 F.3d, 1083 (8th Cir. 1996).

With respect to his allegation that the jail leaked, Richardson has indicated the leaks occurred during rains and would slow down and quit when it was no longer raining. Richardson does not indicate he suffered any personal injury or ill health because of the leaks. *Resp.* at ¶ 22. Under these circumstances, there are no genuine issue of material fact as to whether Richardson was deprived of "a single, identifiable human need, such as food, warmth or exercise." *Whitnack*, 16 F.3d at 957.

**(D).** *Excessive Force*

"In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394 (1989). "[T]he constitutional standard applied may vary depending upon whether the victim is an arrestee, a pretrial detainee, or a convicted inmate of a penal institution." *Andrews v. Neer*, 253 F.3d 1052, 1060 (8th Cir. 2001).

In this case, Richardson was a pretrial detainee when the alleged excessive force occurred. *Defendants' Brief* (Doc. 34) at page 4. In *Johnson-El v. Schoemehl,* the Eighth Circuit court noted that:

> [u]nlike convicted prisoners, the state has no right to punish [pretrial detainees]. *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S. Ct. 1861, 1871-72, 60 L. Ed. 2d 447 (1979). Their confinement conditions are analyzed under the due process clause of the Fifth and Fourteenth Amendments rather than the Eighth Amendment's "cruel and unusual punishment" standard which is used for convicted prisoners. *Id*. The injuries detainees suffer must be necessarily incident to administrative interests in safety, security and efficiency. As a pretrial detainee, Freeman's excessive-force claim is properly analyzed under the due process clause of the Fourteenth Amendment. *See Graham v. Conner*, 490 U.S. 386, 395 & n. 10 (1989) (due process clause protects pretrial detainee from force amounting to punishment).

*Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989).

The courts generally analyze excessive force claims of pretrial detainees in the same way as those of arrestees. *Andrews v. Neer*, 253 F.3d 1052, 1060 (8th Cir. 2001)("The evaluation of excessive-force claims brought by pre-trial detainees, although grounded in the Fifth and Fourteenth Amendments rather than the Fourth Amendment, also relies on an objective reasonableness standard."). The use of force must be necessary to some legitimate institutional interest such as safety, security, or efficiency, and the force used must not be in excess of that reasonably believed necessary to achieve those goals. *Schoemehl*, 878 F.2d at 1048. The relevant inquiry being whether the officials behaved in a reasonable way in light of the facts and circumstances confronting them. *See e.g., Wilson v. Williams*, 83 F.3d 870, 875 (7th Cir. 1996).

In this case, according to Richardson, he was down on his knees with his hands behind his back, posing no treat when Grier, Payne, and Smith held him down while Sanders choked him. *Resp.* at ¶ 17. While choking him, Richardson asserts Sanders remarked how good it felt to him. *Id.* As a result of the use of force, Richardson states he received "three separate, horizontal laceration marks on the bicep area of the right arm." *Id.* After the incident, he states he was not allowed to properly

clean the wound. *Id.*

Defendants maintain there is no factual basis for this claim. In support, they offer the affidavit of Bass. Bass states Richardson "has never been subjected to excessive force" at the UCDC. *Defts' Ex.* D at ¶ 4. Bass admits physical force was used on occasion when Richardson refused to return to his cell. *Id.* However, he maintains the force that was "used against him was only that which was necessary given the situation." *Id.* No incident reports, use of force reports, or other documentation was submitted regarding the October 7th incident. No affidavits of the individuals allegedly involved in the use of force on October 7th were submitted.

Defendants also argue that the fact that Richardson had no significant injuries after the incident strongly suggests he was not subjected to excessive force. While the extent of injury is a factor to be considered, it is not dispositive. *See Wilson v. Gaddy*, ____ U.S. ____, 130 S. Ct. 1175, 1178, 2010 WL 596513 (Feb. 22, 2010)(Certiorari granted and judgment reversed "[b]ecause District Court's approach, affirmed on appeal, is at odds with *Hudson's* direction to decide excessive force claims based on the nature of the force rather than the extent of the injury. . . . That is not to say that the 'absence of serious injury' is irrelevant to the Eighth Amendment inquiry." Extent of the injury is one factor to be considered)(citations omitted).

Viewing the evidence in the light most favorable to Richardson, I believe there are genuine issues of fact as to whether Sanders, Payne, Smith, or Grier used excessive force against Richardson and/or failed to protect him from the use of excessive force. At the summary judgment stage, I cannot choose to believe the defendants' version of the events of disbelieve Richardson's version of the events.

### (E). *False and Derogatory Statements*

Richardson maintains false and degrading statements regarding his character were made by UCDC employees. "[D]efamation, *per se*, is not actionable under section 1983." *Underwood v. Pritchard*, 638 F.2d 60, 62 (8th Cir. 1981); *see also Wade v. Goodwin*, 843 F.2d 1150, 1152 (8th Cir. 1988)(A cause of action for damage to character or reputation is not cognizable under § 1983). The Supreme Court has held that a person's interest in his reputation is not considered liberty or property protected by the Due Process Clause. *Paul v. Davis*, 424 U.S. 693 (1976). Thus, "regardless of whom a plaintiff chooses to sue, section 1983 does not address an alleged injury to reputation." *Idema v. Wager*, 120 F. Supp. 2d 361, 371 (S.D.N.Y. 2000).

Similarly, verbal threats, taunts, name calling, and the use of offensive language does not state a claim of constitutional dimension. *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993)(inmate's claims of general harassment and of verbal harassment were not actionable under § 1983); *O'Donnell v. Thomas*, 826 F.2d 788, 790 (8th Cir. 1987)(verbal threats and abuse by jail officials did not rise to the level of a constitutional violation); *Martin*, 780 F.2d at 1338-1339 (being called an obscene name and threatened with adverse consequences unless he cut his hair and shaved does not state a claim of constitutional dimension); *Black Spotted Horse v. Else*, 767 F.2d 516, 517 (8th Cir. 1985)(use of racially offensive language in dealing with a prisoner does not, by itself, state a claim). *Cf. Burton v. Livingston*, 791 F.2d 97, 100-101 (8th Cir. 1986)(a claim was stated where the prisoner alleged "that a prison guard, without provocation, and for the apparent purpose of retaliating against the prisoner's exercise of his rights in petitioning a federal court for redress, terrorized him with threats of death").

**(F).** *Not Brought Before a Judge Within One Hundred and Twenty Days of Arrest*

Richardson was arrested on September 21, 2009, and booked into the UCDC that same day. *Defts' Exs.* B & I; *Resp.* at ¶ 2(A). On September 23, 2009, he appeared in Union County District Court on a charge of terroristic threatening. *Defts' Ex.* C; *Resp.* at ¶ 2(B). On October 29, 2009, an order was entered for Richardson's complete mental examination. *Defts' Ex.* G. Pursuant to the provisions of Rule 28.3(a) of the Arkansas Rules of Criminal Procedure, the period of time from the date of the order until completion of the evaluation was excluded for purposes of speedy trial. *Id.* On June 3, 2010, the Circuit Court of Union County entered an order of acquittal of Richardson due to lack of capacity. *Rep.* at pgs. 24-25. On August 25, 2010, Richardson was transported to the Arkansas State Hospital. *Resp.* at ¶ 27.

The Due Process Clause of the Fourteenth Amendment controls the issue of a pretrial detainee's right to a prompt appearance in court after an arrest by warrant. *See Hayes v. Faulkner County*, 388 F.3d 669, 673 (8th Cir. 2004). In this case, Richardson was taken before a judge within two days of his arrest. His case did not languish. A mental examination was ordered, done, and the report submitted to the court as is evidenced by the order of acquittal. No constitutional claim is stated by the mere fact that Richardson was incarcerated over a period of time as a pretrial detainee.

**G.** *Access to the Law Library*

Finally, Richardson maintains he was not given an adequate amount of time in the law library. "Inmates undeniably enjoy a constitutional right of access to the courts and the legal system." *Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996)(*citing, Lewis v. Casey*, 518 U.S. 343 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977)). In *Myers,* the Eighth Circuit stated that:

> [t]o protect that right, prisons must provide inmates with some access to legal materials or to legal assistance so that inmates can prepare and pursue complaints, and with some ability to mail these complaints and related legal correspondence once prepared. Inmates do not have a right, however, either to law libraries or to unlimited stamp allowances for legal mail. Instead, the duty to make such arrangements is bounded by the inmates' right of meaningful access to the courts. To state a claim that a law library or legal assistance program violates this right, inmates must assert that they suffered an actual injury to pending or contemplated legal claims. Alleging theoretical inadequacies is insufficient. Inmates must instead show, for example, that a complaint that they prepared was dismissed due to a technical requirement that a library's inadequacies prevented them from knowing, or that a library was so inadequate that it prevented them from filing a complaint for actionable harm at all.

*Myers*, 101 F.3d at 544 (citations omitted).

In *Cody v. Weber*, 256 F. 3d 764 (8th Cir. 2001), the Eighth Circuit noted that the Supreme Court had "determined that the right of access to the courts guarantees an inmate the ability to file lawsuits that directly or collaterally attack the inmate's sentence or that challenge the conditions of the inmate's confinement, but it does not extend to the right to 'discover grievances' or to 'litigate effectively once in court.'" *Cody*, 256 F. 3d at 767-68 (*quoting Lewis*, 518 U.S. at 354-55).

In this case, Richardson was given access to the law library but for what he considered an inadequate amount of time. He does not maintain he was prevented from filing a case or a claim because he was denied more time in the law library.

Although "[p]ro se defendants have a right of access to adequate law libraries or adequate assistance from persons trained in the law," *United States v. Knox*, 950 F.2d 516, 519 (8th Cir. 1991)(quotations omitted), the right is not an abstract one and the inmate must "demonstrate that the alleged shortcomings . . . hindered his efforts to pursue a legal claim." *Lewis*, 518 U.S. at 351. *See also Hartsfield v. Nichols*, 511 F.3d 826, 832 (8th Cir. 2008)(Hartsfield failed to allege he was prevented from filing a complaint, or a filed complaint was dismissed for lack of legal adequacy. He

only roughly and generally asserted that he was prevented from filing because he did not know what arguments to make. This claim is speculative and was properly dismissed). *See also Klinger v. Department of Corrections*, 107 F.3d 609, 617 (8th Cir. 1997) (to prevail on access-to-courts claim, inmate must show actual injury or prejudice even if denial of access to library is complete and systematic). No such demonstration has been made in this case.

### 3.  Conclusion

For the reasons stated, Defendants' motion for summary judgment (Doc. 24) is granted in part and denied in part. Specifically, the motion is granted with respect to the following claims: the failure to provide *Miranda* warnings; the alleged unlawful search of the home; all claims that he was subjected to unconstitutional conditions of confinement except Richardson's claim that he was denied showers and hygiene products from September 29th to November 13th; false and derogatory statements; delay in being brought before a judge; and his claim that he was provided inadequate time in the law library. This leaves for later resolution Richardson's claims that he was denied showers and hygiene products for approximately six weeks and his claim he was subjected to excessive force on October 7, 2009.

DATED this 5th day of January 2011.

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE